**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| NICKSON JOSEPH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FCI JESUP,<br><br>Respondent. | CIVIL ACTION NO.: 2:25-cv-152 |

## REPORT AND RECOMMENDATION

Petitioner Nickson Joseph ("Joseph"), who is currently incarcerated at the Federal Correctional Institution-Coleman Low in Coleman, Florida, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus while he was housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). Doc. 1. Respondent filed a Motion to Dismiss, and Joseph filed a Response. Docs. 11, 13. I notified the parties I was converting the Motion to Dismiss into a partial Motion for Summary Judgment and allowed the parties the opportunity to submit additional evidence.[1] Doc. 16. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's converted Motion for Summary Judgment, **DISMISS** Joseph's § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Joseph *in forma pauperis* status on appeal. I also **RECOMMEND** the Court **DENY as moot** Joseph's Motions for Injunctive Relief and for Medical Intervention and Protection. Docs. 3, 4.

---

[1] Neither party submitted additional evidence in response to this Order.

## BACKGROUND

Joseph was convicted in the District Court for the Southern District of Georgia of conspiracy to possess with intent to distribute and to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 and 18 U.S.C. § 2. The Honorable Lisa Godbey Wood sentenced Joseph to 110 months in prison. Joseph has a projected release date of February 19, 2029, via good conduct release, and February 20, 2028, via First Step Act release, and a home detention eligibility date of August 20, 2027. Doc. 11-1 at 13.

Joseph was charged with violations of Code 104, possession of a dangerous weapon, and Code 201, fighting with another inmate, via Incident Report 4218067. Doc. 11 at 2. After a disciplinary hearing, the Disciplinary Hearing Officer ("DHO") found Joseph guilty of the Code 104 violation and sanctioned him with a loss of 41 days' good conduct time and the loss of 90 days each of commissary and visitation privileges. The DHO also found Joseph guilty of the Code 201 violation and sanctioned him with the loss of 27 days' good conduct time, 10 days' disciplinary segregation, and 60 days' loss of email privileges. Id. at 4. Joseph was also charged with a violation of Code 203, threatening bodily harm, via Incident Report 421822. Id. After a hearing, the DHO found Joseph guilty of this violation and sanctioned him with the loss of 27 days' good conduct time, 10 days' disciplinary segregation, and 90 days each of loss of email and visitation privileges. Id. at 6.

## DISCUSSION

In his Petition, Joseph contends that Bureau of Prisons' ("BOP") staff placed him in the Special Housing Unit ("SHU") without notice or a hearing, in violation of his right to due process. Doc. 1 at 4. Joseph also contends that BOP staff lodged disciplinary charges against him that staff knew were fabricated and retaliatory in response to Joseph's Prison Rape

Elimination Act ("PREA") reports. Id. at 5. Joseph also contends there is no evidence to support the findings of guilt and that those findings were based on charges that contradict the statements in the incident reports. Id. Joseph asserts that: he was retaliated against for making PREA reports, in violation of the First Amendment; staff were deliberately indifferent to his serious medical needs; his placement in SHU imposed an atypical and significant hardship in relation to the ordinary incidents of prison life; and staff unlawfully executed his sentence by obstructing his approved transfer to a halfway house. Id. at 3–5.

Respondent asserts that Joseph's Petition should be denied because Joseph was afforded all process due to him and some evidence supports the Disciplinary Hearing Officer's ("DHO") findings. Doc. 11 at 9–12. Respondent also states that Joseph failed to exhaust his administrative remedies.[2] Id. at 6–9. Finally, Respondent states that this Court's lacks jurisdiction based on § 2241 to entertain Joseph's remaining claims or they are otherwise moot. Id. at 12–15.

## I. Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] The Court notes, in certain circumstances, it should not determine exhaustion issues. Specifically, in Jenner v. Stone, this Court noted, "Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'" Jenner v. Stone, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), adopted, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (quoting Santiago-Lugo v. Warden, 785 F.3d 467, 474–75 (11th Cir. 2015)). "However, 'a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." Id. (quoting Santiago-Lugo, 785 F.3d at 475). Here, the Court has opted not to address Respondent's exhaustion ground for dismissal since Joseph does not raise a meritorious habeas corpus claim. I do note that exhaustion is the only ground for dismissal Joseph addresses in his Response to the Motion to Dismiss, doc. 13, despite having ample opportunity to respond to Respondent's arguments. Docs. 11, 12, 16, 17. As a result, all other portions of the Motion to Dismiss are unopposed.

R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences which can be drawn from the record in a light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. The BOP Met Due Process Requirements

### A. Disciplinary Proceedings

To determine whether Joseph's right to due process was violated, the Court must determine what process was owed to Joseph. A prisoner has a protected liberty interest in statutory good time credits and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Eleventh Circuit has determined an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

#### *1. Incident report 4218067.*

Joseph was charged on November 21, 2025, with possessing a dangerous weapon, in violation of Code 104, and fighting with another person, in violation of Code 201. Doc. 11-1 at 4, 17–19. Joseph was given a copy of the incident report the same day. Id. at 17–19. The Unit Discipline Committee ("UDC") referred the matter to a DHO for further disposition after an investigation was conducted and was placed in the SHU pending the DHO hearing. Id. at 18–19. As part of the UDC investigation, Lieutenant Wright read the incident report to Joseph and advised Joseph that he had the right to remain silent; Joseph stated he understood his rights and gave a statement: "Man, I just got tired of that man bullying me. He's fought me twice, and he

still taunts me every day. I'm just tired[;] I can't take it anymore. He hit me with his cane; I had to defend myself." Id. at 19. The UDC chair gave Joseph his DHO hearing notice, and Joseph signed this notice and indicated that he did not want a staff representative but wanted a witness at the hearing.[3] Id. at 25, 27. Joseph also signed the notice of his hearing rights. Id. DHO Tisdale found Joseph had committed both charged acts and imposed as sanctions for the Code 104 charge the disallowance of 41 days of good conduct time and the loss of 90 days of commissary and visitation privileges and disallowance of 27 days of good conduct time, 10 days of disciplinary segregation, and the loss of 60 days of email privileges for the Code 201 charge. Id. at 23. DHO Tisdale signed her report on December 5, 2025, and the report was delivered to Joseph on December 8, 2025. Id.

As set forth in the attachments to the parties' pleadings, the record shows that Joseph received the required due process protections. An incident report was issued on November 21, 2025, and Joseph received this incident report the same day. Id. at 19. The UDC conducted an investigation and referred the matter to a DHO for hearing. Id. Joseph was advised of his rights before the DHO and received a copy of the notice of hearing and his rights on November 23, 2025, including the right to remain silent. Id. at 25. Joseph received a DHO hearing on November 25, 2025. Id. at 20. Joseph attended the hearing, and his rights were again read and reviewed with him, including the right to have a staff representative, to call witnesses, to present documentary evidence, and to remain silent. Id. at 20–21. The DHO noted that Joseph declined to have a staff representative present and did not wish to present evidence or witnesses, but he did provide as a statement: "This inmate turned my planet a few times. He's always fighting

[3] On the notice of hearing before DHO form, Joseph indicated he wanted to call "B. Starr," the cook foreman, as a witness and that Mr. Starr could testify that inmate Michael Holmes was on top of Joseph, "pounding [him]." Doc. 11-1 at 27. At the hearing itself, it appears that Joseph waived his right to call witnesses. Id. at 21.

people. This inmate is a bully." Id. at 20, 22. DHO Tisdale noted Joseph did not submit documentary evidence, either at the incident report phase or the DHO phase as a defense but did provide statements at both levels. Id. at 22. Following the hearing, DHO Tisdale detailed her factual and legal conclusions, and Joseph was provided with the DHO's written report on December 8, 2025. Id. at 23.

Thus, the well documented evidence demonstrates that Joseph received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact for Incident Report 4218067. Joseph presents nothing that creates a genuine dispute as to any material fact related to this claimed violation of his due process rights.

***2. Incident report 4218122.***

Joseph was also charged on December 1, 2025, with threatening bodily harm, in violation of Code 203, stemming from the same incident as Incident Report 4218067. Doc. 11-1 at 7, 29. Joseph was given a copy of the incident report the same day. Id. The UDC referred the matter to a DHO for further disposition after an investigation was conducted. Id. at 30. As part of the UDC investigation, Lieutenant Wright read the incident report to Joseph and advised Joseph he had the right to remain silent; Joseph stated he understood his rights and also stated: "I'm getting charged with threatening when he was the one trying to beat me with a pipe? I thought I already got a shot on this incident." Id. at 31. The UDC chair gave Joseph his DHO hearing notice, and Joseph signed this notice and indicated that he did not want a staff representative or any witnesses at the hearing. Id. at 38, 40. Joseph also signed the notice of his hearing rights. Id. DHO Tisdale found Joseph had committed the charged act and imposed as sanctions the disallowance of 27 days of good conduct time, 10 days of disciplinary segregation, and the loss

of 90 days of visitation privileges. Id. at 35. DHO Tisdale also signed this report on December 5, 2025, and the report was delivered to Joseph on December 8, 2025. Id.

As set forth in the attachments to the parties' pleadings, the record shows that Joseph received the required due process protections. An incident report was issued on December 1, 2025, after a re-write, and Joseph received this incident report the same day. Id. at 29. The UDC conducted an investigation and referred the matter to a DHO for hearing. Id. Joseph was advised of his rights before the DHO and received a copy of the notice of hearing and his rights on December 2, 2025, including the right to remain silent. Id. at 38, 40. Joseph received a DHO hearing on December 3, 2025. Id. at 33. Joseph attended the hearing, and his rights were again read and reviewed with him, including the right to have a staff representative, to call witnesses, to present documentary evidence, and to remain silent. Id. at 33–34. The DHO noted that Joseph declined to have a staff representative present and did not wish to present evidence or witnesses, but he did admit to the charge. Joseph stated, "I was frustrated and said I would hit him if I got the pipe from him." Id. at 33. DHO Tisdale noted Joseph provided statements at both the incident report and UDC levels. Id. at 35. Following the hearing, DHO Tisdale detailed her factual and legal conclusions, and Joseph was provided with the DHO's written report on December 8, 2025. Id. at 36.

Thus, the well documented evidence for this incident report demonstrates that Joseph received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact for Incident Report 4218122. Joseph presents nothing that creates a genuine dispute as to any material fact related to this claimed violation of his due process rights.

As Joseph fails to show any genuine dispute as to any fact material to the asserted violations of his procedural due process rights, the Court should **GRANT** this portion of Respondent's Motion to Dismiss.

**B. Some Evidence Supports the DHO's Findings**[4]

Additionally, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).[5] "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. Appx' 752, 757 (11th Cir. 2006) (internal citation omitted).

---

[4] Joseph does not specifically challenge the sufficiency of the evidence used to convict him of disciplinary infractions, though he does state there was no evidence to support the findings. Doc. 1 at 5. The Court addresses the "some evidence" standard for completeness purposes and because Respondent raises this in the Motion to Dismiss as part of the due process argument.

[5] The "some evidence" standard is a requirement of procedural, not substantive, due process. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) ("We now hold that revocation of good time does not comport with 'the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record.'") (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (noting in Wolff and Hill "the Supreme Court addressed the requirements of procedural due process in the prison setting.").

"Some evidence" supports the DHO's findings that Joseph committed the charged offenses. Specifically, DHO Tisdale considered Joseph's admission of guilt to the Code 203 charge, the incident reports and investigations, photographs, medical assessments, and staff memoranda and assessments. Doc. 11-1 at 20–22, 33–35. The record before the Court reveals Joseph received all the due process protections afforded him during the disciplinary proceedings, and any contention to the contrary is without merit.[6] In addition, Joseph does not show a genuine dispute as to any fact material to this portion of his claimed due process violation. Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss.

## III. Claims That Are Moot or Are Not Proper Habeas Corpus Claims

Joseph asserts that he filed a PREA complaint against a staff member and, in retaliation for this protected activity, FCI Jesup officials placed him in the SHU, issued fabricated disciplinary charges against him, denied him medical care, and obstructed his placement in a halfway house. Doc. 1 at 3–4. Joseph also attempts to assert that his placement in the SHU without notice or hearing imposed an atypical and significant hardship upon him. Id. at 4–5. Joseph seeks, among other things, his removal from the SHU, separation from staff involved in retaliating against him, and the restoration and placement of halfway house placement. Id. at 6.

To the extent that Joseph seeks his removal from the SHU and separation from staff involved in the disciplinary proceedings, such claims are now moot since Joseph is no longer housed at FCI Jesup. Doc. 11 at 15. "Events which occur subsequent to the filing of a petition

---

[6] Joseph asserts that officials placed him in the SHU without notice or a hearing. Doc. 1 at 4. The evidence before the Court reveals that Joseph was placed in the SHU based on his disciplinary segregation status as a sanction for violating BOP regulations and was lawfully given notice of this placement "at the end of [his] disciplinary hearing." 28 C.F.R. § 541.25(b); see also, e.g., Doc. 11-1 at 4–5 (stating Joseph received a copy of the incident reports and notice of hearings on the same dates at the incident reports were issued). To the extent Joseph intends for this assertion to be a separate procedural due process violation, such a claim fails as a matter of law and based on the record before the Court.

may render the matter moot." Johnson v. Glover, No. 1:04-CV-413, 2006 WL 1008986, at *1 (M.D. Ala. Apr. 18, 2006) (citing Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 350 (D.C. Cir. 1997)).

And this Court declines to address Joseph's retaliation, denial of medical care, substantive due process, and halfway house placement claims, as these claims concern conditions of confinement, not habeas corpus issues. A petitioner can use the writ of habeas corpus to challenge "the fact or duration of . . . physical confinement itself" or the execution of the sentence itself. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973); Antonelli v. Warden, USP Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008). In contrast, when prisoners bring actions to challenge the circumstances of their confinement, these are civil actions, not habeas corpus actions. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006); Gorrell v. Hastings, 541 F. App'x 943, 945 (11th Cir. 2013); cf. see, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994) (noting that if a prisoner's claim, if successful, could shorten or invalidate a term of imprisonment, the claim sounds in habeas). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." Vaz v. Skinner, 634 F. App'x 778, 780 (11th Cir. 2015).

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Joseph leave to appeal *in forma pauperis*. Though Joseph has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Joseph's Petition and Respondent's construed Motion for Summary Judgment and Joseph's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's construed Motion for Summary Judgment and **DISMISS** Joseph's Petition. Docs. 1, 11. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Joseph *in forma pauperis* status on appeal. I also **RECOMMEND** the Court **DENY as moot** Joseph's Motions. Docs. 3, 4.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA